CHAUNCEY H. STRICKLAND

*v.*

NATIONAL SALT COMPANY.

[Decided October 19th, 1906.]

1. A corporation, authorized to issue stock of the par value of $250 in payment of property or corporate stock, must, to make lawful the issue of stock in consideration of acquiring the stock of another corporation, and to supply a sufficient consideration for a promise to pay an additional sum for such stock, make a *bona fide* appraisal of the actual cash value of the stock acquired at a sum not less than the par value of the stock issued, together with the additional sum agreed to be paid.

2. An intentional disregard of the statutory rule, involving an intentional overvaluation of property acquired by a corporation, is a form of fraud prohibited by the statute, and the issuing of stock without making any appraisal of the value of the thing purchased thereby is unlawful.

3. A domestic corporation was authorized to issue stock of the par value of $250 in payment of property of that value, including shares of corporate stock. The corporation agreed to pay $250 in its own stock for each share of a foreign corporation, and agreed to pay, in addition, $106.25 in ten semi-annual installments.—*Held*, that if each share of stock of the foreign corporation was worth $356.25, the semi-annual installments would be ordinary debts, the equivalent of which had gone into the treasury of the domestic corporation, and would not be dividends.

4. A domestic corporation agreed to pay $250 in its own stock for each share it acquired of the stock of an Ohio corporation, and, in addition, it agreed to pay $106.25 for each share. The domestic corporation brought suit in the courts of Ohio against the foreign corporation and a trust company, acting on behalf of the certificate-holders, to set aside the agreements.—*Held*, that a decree of the Ohio court canceling the agreements was binding on the trust company, and was *res judicata* in a proceeding by it to establish a claim against the domestic corporation for the amount which it had agreed to pay for the stock.

On appeal from the adjudication of the receivers disallowing the claim of the American Trust Company, Limited, amounting to $725,156.40, with interest thereon.

*Mr. Joseph H. Adams* and *Mr. Charles E. Hendrickson, Jr.,* for the appellants.

*Mr. Charles W. Fuller* and *Messrs. William B. Putney* and *Henry B. Twombly* (of New York), for the receivers.

STEVENSON, V. C.

My conclusion is that the adjudication of the receivers should be affirmed.

1. The question might be raised whether there ever was any lawful consideration for the contract of the National Salt Company to make these cash payments to the certificate-holders on whose behalf the trust company presents its claim. The New Jersey company, the National Salt Company, bought the shares of stock of the United Salt Company, the Ohio corporation, from these certificate-holders, and undertook to pay the consideration partly by an issue of its own stock and partly with cash, which was agreed to be paid in installments during a period of five years. It is unnecessary to set forth the details of the transaction or exhibit the parts which the National Salt Company, the United Salt Company, the American Trust Company and the stockholders of the United Salt Company, who became certificate-holders, took therein. These details appear to be quite fully set forth in the report of the decision of the federal circuit court of appeals hereinafter cited.

For present purposes the fact to be kept in view is that the National Salt Company paid for the stock of the Ohio company which it bought, in part at least, by an original issue of its own stock. Under the certificate of incorporation of the National Salt Company and the laws of New Jersey, this company could lawfully issue stock of the par value of $250 in payment for property of that value in cash, including shares of stock such as that of the United Salt Company. In this instance this company agreed to pay, and did pay, $250 in its own stock for each share it acquired of the stock of the United Salt Company of the par value of $100, and it also agreed to pay, and undertook to bind itself legally to pay, in addition, the sum of $106.25. In order to make the issue of stock lawful and supply a sufficient consideration for the promise to pay the $106.25, the directors of the National Salt Company must have made a *bona fide* appraisal of the actual cash value of the stock of the United

Salt Company at a sum not less than $356.25 per share. Whether the appraisal would support the stock issue and the agreement to pay the $106.25 if the value found was less than the above-mentioned sum ($356.25) by the discount on the installments I do not stop to consider. The question of fact suggested is whether, applying the rule laid down by the court of errors and appeals in *Donald* v. *American Smelting Co., 62 N. J. Eq.* (*17 Dick.*) *729,* the inference must be drawn from the testimony in this case that the directors of the National Salt Company were guilty of fraud in this transaction. Intentional disregard of the statutory rule involving an intentional overvaluation of the property purchased, of course, is one form of the fraud prohibited by the statute. Issuing stock without any valuation at all—without making any appraisal or ascertainment of value of the thing bought—must, I think, likewise be condemned.

In this case there seems to be room to argue that, after placing the burden of proof upon the objectors to this claim, the evidence leads to the conclusion that there was no appraisal of the value of the stock of the United Salt Company at the sum of $356.25 per share, or that sum less the discount on the deferred payments, or at $250 in cash, or any other sum of money whatsoever. Of course, a valuation of the acquired property in stock of the purchasing company, or an agreement made in entire good faith providing an equitable basis for the exchange of stock, is not a compliance with the statutory rule. The directors of the purchasing company are bound to honestly determine the value of the property which they acquire in money. The value in money so ascertained is the measure of the amount of stock at par which may be issued therefor.

It may be argued that, for all that appears in this case, all the parties to this transaction went into it knowing well that each share of stock of the United Salt Company was fully paid for, or more than paid for, by the two and one-half shares of stock of the National Salt Company for which it was exchanged. The result might be that the agreement on the part of the National Salt Company to pay $106.25, in addition to giving two and one-half shares of its stock, should be held to be without

consideration.  See *Volney* v. *Nixon, 68 N. J. Eq. (2 Robb.)* *605 (1904)*.

Another view also might be that a full consideration should be accorded to the promise to pay the $106.25 if the share of stock of the United Salt Company acquired was worth that much money, while any deficiency in the value of the acquired share to make up the total of $356.25 would be collectible by a call on the two and one-half shares of stock of the National Salt Company.

I shall not consider any of the legal questions which arise in case the proposition of fact should be established that there was no *bona fide* appraisal of the stock of the United Salt Company at the value *in money* of $356.25 per share, and that all the parties to this transaction were so informed.  It is this fundamental proposition of fact which remains undetermined, so far as this case is concerned.

2. It is also unnecessary to discuss or determine the question whether the agreement to pay the $106.25 in cash in ten semi-annual installments through a period of five years was in fact an attempt to guarantee the payment of dividends for that period of time upon the new stock issued by the National Salt Company.  In an action brought by a certificate-holder against the company the United States circuit court of appeals, second circuit, decided this question upon the evidence then before the court adversely to the certificate-holder.  *National Salt Co.* v. *Ingraham, 122 Fed. Rep. 40 (1903)*.  The same court, when the same case was brought before it again, held that its prior decision was erroneous, and ruled the other way.  *Ingraham* v. *National Salt Co., 130 Fed. Rep. 676 (1904)*.

If the evidence shows, as a matter of fact, that each share of stock of the United Salt Company was worth $356.25, then the semi-annual installments would not be dividends paid out of the profits, but would be ordinary debts, the equivalent of which had gone into the treasury of the company, and thus constituted the fund, or the origin of the fund, from which such debts may be paid.  If for every $106.25 which the National Salt Company agreed to pay out it had received an exact equivalent, or an equivalent less the discount on the installments, there are cer-

tainly strong grounds for arguing that the engagement is not a contract to guarantee dividends. On the other hand, if the directors of the National Salt Company in good faith appraised each share of stock of the United Salt Company at $356.25, it certainly is a singular coincidence that such value exactly sustained the new issue of stock and exactly supplied the equivalent of the guaranteed dividends which, according to the terms of the original deal, the stockholders of the United Salt Company were to have. Of course, the transaction is not to be condemned as unlawful because it accomplished the same object which might be accomplished, or formerly was attempted to be accomplished, by an unlawful means. *Pierce* v. *Old Dominion, &c., Co., 67 N. J. Eq. (1 Robb.) 399;* see *pp. 422, 423.* This whole question whether the agreement under consideration was an agreement to pay for property or an agreement to guarantee dividends is purely one of fact, and I think is essentially connected with the question of fact above referred to relating to the *bona fide* valuation of the stock of the United Salt Company.

3. I have left the questions of fact and of law above indicated undecided because it seems to me beyond all question that the appellant, the American Trust Company, and its successors are bound by the decree of the Ohio court, which has been put in evidence in this case. In an action in the court of common pleas in Cuyhahoga county, Ohio, which went to a decree after this appeal was taken, all the agreements upon which the appellant's claim is based were declared void and set aside. The National Salt Company was the complainant in this action, and the United Salt Company and this appellant, the American Trust Company, and large numbers of the certificate-holders were defendants. The decree provided for the cancellation of all the agreements which the parties had made and the exchanging back of the certificates of stock of the two salt companies. It is not suggested that this decree has even been appealed from by anybody. It stands in full force to-day, and no way has been suggested by which its force and effect as a bar to the appellant's claim can be evaded. The decision of the receivers in disallowing the appellant's claim will therefore be affirmed, upon the ground that the invalidity of the claim is *res adjudicata.*

Whether any of the certificate-holders not parties to the suit in the Ohio court have valid claims which they are severally entitled to prove as debts before these receivers is a question which is not presented for consideration. It is the claim of the American Trust Company, acting on behalf of all the certificate-holders under the instruments which have been set aside as illegal and void, that the receivers have properly disallowed. See *National Salt Co.* v. *Ingraham, 143 Fed. Rep. 305 (1906).*